```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       JACKSON DIVISION


PERCY APPLEWHITE and
LOUISE APPLEWHITE                                          PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:07-cv-162-WHB-LRA


UNITED STATES Of AMERICA,
DEPARTMENT OF VETERANS AFFAIRS,
VETERANS HEALTH ADMINISTRATION, and
JOHN & JANE DOES 1-5                                       DEFENDANTS
```

### OPINION AND ORDER

This cause is before the Court on several motions that have been filed by the parties in the above referenced litigation. Having considered the Motions; Responses, if filed; Rebuttals, if filed, attachments to the pleadings, as well as supporting and opposing authorities, the Court finds:

Plaintiffs' Motion and Amended Motion to Compel are not well taken and should be denied;

Plaintiffs' Motions to Extend Time to File Affidavit in Support of Motion for Summary Judgment are well taken and should be granted;

The Motion of the Government to Strike Plaintiffs' Supplemental Expert Designation of Dr. Paul Alphonse is not well taken and should be denied;

The Motion of the Government for Summary Judgment is not well taken and should be denied;

The Motion of the Government *in Limine* is not well taken and should be denied.

## I.  Factual Background and Procedural History

In September of 2002, Plaintiff, Percy Applewhite ("Applewhite"), was admitted to the G.V. "Sonny" Montgomery Veterans Affairs Medical Center for treatment of adenocarcinoma of the prostrate.  According to the Amended Complaint, on September 19, 2002, Applewhite was scheduled to undergo a Radical Retropubic Prostatectomy ("RRP").  During the surgical procedure, Applewhite sustained a rectal laceration/perforation of the lower bowel, which, according to Plaintiffs, resulted in his developing, *inter alia,* a pelvic abscess and sepsis, and required him to undergo additional surgical procedures including a nephostomy and colostomy.  Plaintiffs further allege that the rectal laceration and ensuing complications were caused by the failure of Veterans Affairs Hospital nurses to perform proper pre-operation procedures, specifically a bowel prep.

On September 17, 2004, and in September of 2006, Plaintiffs filed administrative claims with the Veteran Health Administration. On March 23, 2007, having received no decision regarding their administrative claims, Plaintiffs filed the subject lawsuit in this Court alleging claims of negligence and loss of consortium against the Government.[1]  An amended Complaint, alleging the same causes of

---

[1]  For the purposes of this Opinion and Order, the defendants will be referred to collectively as the "Government".

action, was filed on July 19, 2007.  As Plaintiffs have alleged a claim arising under the Federal Tort Claims Act, the Court may properly exercise subject matter jurisdiction over this case.

## II.  Legal Discussion

### A.  Plaintiffs' Motions to Compel

The record shows that on September 19, 2008, Plaintiffs filed a motion seeking to compel discovery responses from the Government. The motion was temporarily denied on September 22, 2008, by United States Magistrate Judge Linda R. Anderson on the basis that Plaintiffs had failed to submit a "Good Faith Certificate" as required under Rule 37.1 of the Uniform Rules of the United States District Court for the Northern and Southern Districts of Mississippi ("Local Rules").  On September 25, 2008, Plaintiffs filed an Amended Motion to Compel, attaching the required Good Faith Certificate.

The docket shows that on March 20, 2008, Judge Anderson entered an Order extending the discovery deadline in this case to July 6, 2008.  On June 20, 2008, Judge Anderson granted the unopposed motion of the Government for an extension of time in which to file its discovery responses, thereby requiring its responses be filed on or before July 30, 2008.  On August 14, 2008, the parties filed a Joint Motion for Extension of Discovery Deadline, requesting that the discovery deadline be extended to

3

August 29, 2008, for the purpose of deposing the plaintiffs. In this Motion, the parties indicated that all written discovery had been completed. The joint motion was granted on August 15, 2008. On August 28, 2008, Plaintiffs filed a motion seeking to extend the discovery deadline for the purpose of taking additional depositions. This motion was granted on August 29, 2008. Finally, on September 11, 2008, Plaintiffs filed a motion seeking to extend the discovery deadline so their expert could review the recently taken depositions, and supplement his opinion if necessary based on those depositions. This motion was granted on September 12, 2008.

Under the Local Rules governing this Court, "[a]ll discovery motions must be filed so that they do not affect the discovery deadline." Local Rule 26.1(E). See also Local Rule 7.2(B)(2) ("Discovery motions must be filed sufficiently timely that they do not affect the discovery deadline."). In the case *sub judice*, the docket shows that the deadline for discovery was July 30, 2008. Although the discovery deadline was later extended, it was only extended for the purposes of allowing the parties to complete depositions, and to permit Plaintiffs' expert witness an opportunity to supplement his opinion based on those depositions. As the discovery deadline for written discovery expired on July 30, 2008, the Court finds Plaintiffs' September 19, 2008, motion, and their September 22, 2008, amended motion, by which they seek to compel responses to their interrogatories and requests for production of documents should be denied as untimely.

4

**B.    Plaintiffs' Motion to Extend Time to File Affidavit in Support of Motion for Summary Judgment**

On September 22, 2008, Plaintiffs filed a motion seeking an extension of time in which to convert the supplemental report of their expert witness to affidavit form, and to file that affidavit in support of their Response to the Motion of the Government for Summary Judgment. Plaintiffs filed two additional motions seeking additional time for the same purposes on September 25, 2008, and September 29, 2008. The referenced affidavit was filed on October 1, 2008.

As the affidavit referred to in Plaintiffs' motions has been filed with the Clerk of Court, the Court finds that their motions seeking leave to file the affidavit should be granted. The issue of whether the Court will consider the content of the affidavit when deciding the subject Motion for Summary Judgment will be discussed below.

**C.    Motion of the Government to Strike Plaintiffs' Supplemental Expert Designation of Dr. Paul Alphonse**[2]

On April 14, 2008, Plaintiffs filed their Designation of Experts ("Designation"), thereby designating Dr. Paul Alphonse ("Alphonse") as their expert witness in the area of urology.

---

[2] The Court has considered this Motion prior to the date on which Plaintiffs' response was due. As the Court finds that the Motion to Strike can be resolved without a response by Plaintiffs, their motion for an extension of time in which to file a response will be denied as moot.

According to the Designation, Alphonse offers the following opinions in this case:

> (1) That it was noted in the Urology Operative notes that a bowel prep was not done prior to the prostatectomy to prevent "gross stool contamination." Dr. Alphonse opines that "[i]t is quite possible that the morbidity of a diverting colostomy may have been completely avoided if a bowel prep was given; and
>
> (2) The urological surgical consent does not state the risk factor of rectal injury as a possible complication of the surgery, and therefore, it does not appear that the patient (Percy Applewhite) was appropriately informed of all possible risk factors of the surgery. If so, Dr. Alphonse opines that Mr. Applewhite may have chosen another treatment with less morbidity.

See Designation of Experts [Docket No. 14]. On April 23, 2008, Plaintiffs filed a supplement to their Designation attaching an April 18, 2008, letter from Alphonse in which he discusses the bases for his opinions. See Pls.' Supplemental Designation of Experts [Docket No. 17], at Ex. B ("Supplemental Designation"). In this letter, Alphonse supplements his prior opinions by including, *inter alia*, the following: "A bowel prep is always done prior to a prostatectomy to prevent 'gross stool contamination.' It is quite possible that the morbidity of a diverting colostomy may have been avoided if a bowel prep was given." Id.

On September 19, 2008, Plaintiffs filed their Second Supplemental Designation of Experts, identifying Alphonse's opinions as follows:

> (1) That it was stated in the Urology Operative notes that when the rectal injury was noted, "It was unclear whether or not the patient actually received a bowel

6

>prep. After further discussion with his family, it was noted that the patient had not received a bowel prep and General Surgery was called ... further examination of the rectal injury noted gross stool contamination and General Surgery was brought in the surgical theater to evaluate." Dr. Alphonse notes that this was never answered or addressed in the Motion in Limine. Dr. Alphonse contends that a bowel prep is still routinely done prior to prostatectomy. He states that this is done to reduce fecal content in the rectum and prevent "gross stool contamination." Dr. Alphonse opines that "[i]t is quite possible that the morbidity of a diverting colostomy may have been completely avoided if there were not gross stool contamination in the operative field at the time of injury; and
>
>(2) The urological surgical consent noted as page "114" does not mention the risk factor of rectal injury as a complication of this surgery. A rectal injury is a well cited complication of this procedure. In Dr. Alphonse's opinion, a rectal injury is a known and material risk factor which merits disclosure to the patient prior to this complex surgical procedure.
>
>Dr. Alphonse states that it is his opinion that a thorough discloser allows the patient to make an informed choice as to whether to proceed surgically versus choosing another treatment with less morbidity. Therefore, Dr. Alphonse opines that to a reasonable degree of medical probability in reference to the two points mentioned above, that there was a breech in the standard of medical care in this case.

See Second Supplemental Designation of Experts [Docket No. 48] ("Second Supplemental Designation"). Attached to this supplement is Alphonse's September 12, 2008, letter to Plaintiffs' counsel in which he gives the bases for his opinions, including citations to medical treatises. Id. at Ex. B.

The Government now moves, pursuant to Rules 16(f), 26(e), and 37(b)(2)(A) & (c)(1) of the Federal Rules of Civil Procedure, to strike Plaintiffs' Second Supplemental Designation on the grounds

7

that it was filed outside the time permitted by the scheduling order. In this circuit, the decision as to whether to exclude expert testimony as a sanction for violating a discovery order is determine by weighing the following four factors:

> (1) the explanation, if any, for the party's failure to comply with the discovery order;
>
> (2) the prejudice to the opposing party of allowing the witnesses to testify;
>
> (3) the possibility of curing such prejudice by granting a continuance; and
>
> (4) the importance of the witnesses' testimony.

Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996).

In the case *sub judice*, the Government argues that it will be unfairly prejudiced if Alphonse is permitted to testify in accordance with the opinions offered in the Second Supplemental Designation because Plaintiffs, in that pleading, "disclose for the very first time that Dr. Alphonse believes that 'a bowel prep is still routinely done prior to a prostatectomy' and that 'the morbidity of a diverting colostomy may have been avoided if there were not gross stool contamination in the operative field at the time of injury.'" See Mot. to Strike [Docket No. 53] at 2-3. The Court finds that this argument is not supported by the record. Although the opinions cited by the Government do not appear in the body of Plaintiffs' Designation or Supplemental Designation, their Supplemental Designation expressly references Alphonse's April 18,

2008, letter (which is attached as Exhibit B to that pleading) in which he opines: "a bowel prep is always done prior to a prostatectomy to prevent 'gross stool contamination'. It is quite possible that the morbidity of a diverting colostomy may have been avoided if a bowel prep was given." See Supplemental Designation, at Ex. B. Thus, the Court finds that the Government knew or should have known, not later than April 23, 2008, the date on which the Supplemental Designation was filed, of Alphonse's opinions regarding whether a bowel prep is routinely performed prior to a prostatectomy, and whether a diverting colostomy could have been avoided had such prep been administered. As the opinions in Plaintiffs' Second Supplemental Designation are nearly identical to those that were provided in their Supplemental Designation, and as the Supplemental Designation was made approximately one week after Plaintiffs' Designation was initially filed, and approximately six months before the scheduled bench trial of this case, the Court finds that the Government will not be prejudiced in the event Alphonse is permitted to testify in accordance with his most recent opinions.

   The Government also argues that it will be unfairly prejudiced if Alphonse is permitted to testify regarding his recent opinions that: (1) the known complications of a RRP include rectal injury, (2) a rectal injury is a well cited complication and known risk factor that "merits disclosure to the patient", and (3) "a thorough

9

disclosure allows the patient to make an informed choice as to whether to proceed surgically versus another treatment with less morbidity." See Mot. to Strike, at 3. The Court again finds this argument is not supported by the record. Although Alphonse's opinions regarding whether a rectal laceration is known risk factor of a RRP are stated with greater specificity in Plaintiffs' Second Supplemental Designation, the Court finds that the information provided in Plaintiffs' Designation and Supplemental Designation was sufficient to place the Government on notice of these opinions. Again, in Plaintiffs' Designation they identify the following as one of Alphose's opinions:

> The urological surgical consent does not state the risk factor of rectal injury as a possible complication of the surgery, and therefore, it does not appear that the patient (Percy Applewhite) was appropriately informed of all possible risk factors of the surgery. If so, Dr. Alphonse opines that Mr. Applewhite may have chosen another treatment with less morbidity.

See Designation. Based on the content of this disclosure, the Court finds that the Government knew or should have known (1) that Alphose opined that a rectal injury was one of the known complications of a RRP, (2) that this risk factor was not disclosed to Applewhite, and (3) that Applewhite may have chosen a different form of treatment had he been made aware of this risk. As the Court finds that the opinions in Plaintiffs' Second Supplemental Designation are consistent with those provided in their initial Designation, the Court finds that the Government will not be

prejudiced in the event Alphonse is permitted to testify in accordance with the opinions stated in Plaintiffs' Second Supplemental Designation.

In sum, the Court finds that Alphonse's opinions were sufficiently disclosed in Plaintiffs' Designation and Supplemental Designation so as to put the Government on notice of those opinions. As such, the Court finds that the Government will not be prejudiced in the event Alphose testifies in accordance with the opinions stated in Plaintiffs' Second Supplemental Designation, and that a continuance is not required to avoid prejudice to the Government. Accordingly, the Court finds that the Motion of the Government to Strike should be denied. The Court additionally finds that it may consider Alphonse's opinions, as disclosed in Plaintiffs' Second Supplemental Designation, when considering the Motion of the Government for Summary Judgment.

**C. Motion of the Government for Summary Judgment**

**i. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.

R. Civ. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists.

It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

**ii.  Discussion**

Applewhite has alleged a claim for medical malpractice under the Federal Tort Claims Act ("FTCA"). Under this Act, liability may be imposed "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As the alleged act or omission in this case occurred in Mississippi, Mississippi law governs Applewhite's medical malpractice claims. See Hollis v. United States, 323 F.3d 330, 334 (5th Cir. 2003) ("Under the FTCA, liability for medical malpractice is controlled by state law."). To prove a prima facie case of medical malpractice under Mississippi law, a plaintiff must demonstrate four key elements: "(1) a duty to conform to a standard of care; (2) a breach of that duty; (3) proximate cause; and (4) as a result, the plaintiff suffered damages." Northrop v. Hutto, No.

13

2007-CA-00355-COA, --- So.2d ----, 2008 WL 2345945, at *2 (Miss. Ct. App. June 10, 2008) (citing Barner v. Gorman, 605 So. 2d 805, 808-09 (Miss. 1992)). See also McMichael v. Howell, 919 So. 2d 18, 22 (Miss. 2005)(applying same elements to lack of informed consent claim).

In support of its Motion for Summary Judgment, the Government first argues that Applewhite's negligence claim fails because he has not established that the lack of a pre-operative bowel prep caused him to sustain the intra-operative rectal laceration underlying his medical malpractice/negligence claim. As understood by the Court, however, the injuries about which Applewhite complains include that the underlying rectal tear caused a gross fecal contamination of the abdomen that had to be treated by performing a colostomy. Applewhite further claims that had a bowel prep been done pre-operatively, the gross fecal contamination would not have occurred and, therefore, the diverting colostomy he now has could have been avoided. As there is conflicting expert evidence regarding whether a pre-operative prep is routinely done prior to a RRP, compare Mot. for Sum. J. at Ex. B (Government expert opining "[b]ecause of the low risk of rectal injury during RRP, in the absence of increased risk factors for rectal laceration, a mechanical bowel preparation is not the standard of care from every RRP.") with id. at Ex. A (Plaintiffs' expert opining that "[a] bowel prep is always done prior to a

14

prostatectomy to prevent 'gross stool contamination.'"), the Court finds there exists a genuine issue of material fact on this claim. See e.g. Hutto, 2008 WL 2345945, at *3 (reversing summary judgment in favor of health care provider on a finding that the expert evidence demonstrated a fact issue as to whether the plaintiff's injuries may have "been avoided or at least mitigated" had the proper standard of care been followed).

The Government has also moved for summary judgment on Applewhite's claim of lack of informed consent. As discussed above, to prove a prima facie case of lack of informed consent under Mississippi law, the plaintiff must prove that there existed a duty, that the duty was breached, and that the breach proximately caused the damages for which recovery is sought.

In the case *sub judice*, Applewhite has established the existence of a duty on the part of the Government to provide informed consent based on the existence of the physician/patient relationship. See Palmer v. Biloxi Regional Med. Ctr., Inc., 564 So. 2d 1346, 1363 (Miss. 1990)(explaining that when "a physician-patient relationship exists, the physician owes the patient a duty to inform and obtain consent with regard to the proposed treatment."). See also McMichael, 919 So. 2d at 22 ("If there is a physician-patient relationship, the doctor automatically has the duty to inform and procure the consent of the patient as it relates to the proposed treatment."). As to the type of information that

15

must be provided, the Mississippi Supreme Court has found that material risks must be disclosed in order to obtain informed consent.  See e.g. Whittington v. Mason, 905 So. 2d 1261, 1266 (Miss. 2005)(affirming summary judgment on lack of informed consent claim on the basis that the plaintiff did not produce expert testimony in order to establish that the alleged risks of surgery were material and, therefore, should have been disclosed); Jamison v. Kilgore, 903 So. 2d 45, 50 (Miss. 2005) (finding that a physician is required to "disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment.") (citations omitted).  Based on its review of the record, the Court finds that there exists a genuine issue of material fact with regard to whether a rectal tear is one of the material risks of a RRP that must be disclosed to a plaintiff in order to obtain informed consent.  Compare Mot. for Sum. J. at Ex. B (Government expert opining that the risk of rectal laceration during a RRP is considered "low" and that Applewhite was given informed consent about the risks of RRP before his surgery) with id. at Ex. A (Plaintiffs' expert opining that the consent signed by Applewhite did not state the risk of rectal injury as a possible complication of a RRP and, therefore, it does not appear that he was appropriately informed of all possible risk factors of the surgery).

The Court additionally finds that there exists a genuine issue of material fact with regard to proximate causation. Under Mississippi law:

> Once proof of duty and breach of that duty is provided, the plaintiff is required to produce evidence of two sub-elements of causation. First, the plaintiff must show that a reasonable patient would have withheld consent had she been properly informed of the risks, alternatives, and so forth. And second, the plaintiff must show that the treatment was the proximate cause of the worsened condition ( i.e., injury). That is, the plaintiff must show that she would not have been injured had the appropriate standard of care been exercised. Generally, proof of the latter sub-element requires expert testimony that the defendant's conduct – not the patient's original illness or injury – led to the worsened condition.

Jamison, 903 So. 2d at 48 (alterations in original) (citations omitted). On the issue of causation, Applewhite has submitted evidence that he would not have undergone the RRP had he been informed of the risk of a rectal injury. See Resp. to Mot. for Sum. J., Ex. 2 (Applewhite Dep.), 48-49. The record also suggests that the injury in this case, i.e. the rectal laceration, resulted because of the RRP and not because of the underlying adenocarcinoma that was being treated.

After reviewing the parties' pleadings, the Court finds that there exists genuine issues of material fact with regard to Applewhite's claims of medical malpractice/negligence and lack of informed consent. Accordingly, the Court finds that the Motion of the Government for Summary Judgment on these claims should be denied.

17

**D. Motion of the Government In Limine**[3]

The Government has filed a Motion in Limine seeking to prevent Alphonse from giving testimony related to the opinions he has expressed pertaining to the issue of informed consent on the grounds that they are irrelevant. Having reviewed Alphonse's opinions, the Court finds they are relevant to Applewhite's lack of informed consent claim and, therefore, denies the Motion in Limine.

## IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiffs' Motion and Amended Motion to Compel [Docket Nos. 51 and 58] are hereby denied.

IT IS FURTHER ORDERED that Plaintiffs' Motions to Extend Time to File Affidavit in Support of Motion for Summary Judgment [Docket Nos. 55, 60, and 62] are hereby granted.

IT IS FURTHER ORDERED that the Motion of the Government to Strike Plaintiffs' Supplemental Expert Designation of Dr. Paul Alphonse [Docket No. 53] is hereby denied.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Extension of Time to Respond to Defendant's Objection to and Motion to Strike [Docket No. 66] is hereby denied as moot.

---

[3] The Government filed a motion seeking an extension of time in which to file a rebuttal to its Motion in Limine in the event the Court denied its Motion to Strike. Based on the arguments in the Motion in Limine, the Court finds that a rebuttal is not required to rule on the merits of those arguments. The Government will, of course, be permitted to raise objections to Alphonse's testimony at trial.

IT IS FURTHER ORDERED that the Motion of the Government for Summary Judgment [Docket No. 41] is hereby denied.

IT IS FURTHER ORDERED that the Motion of the Government *in Limine* [Docket No. 38] is hereby denied.

IT IS FURTHER ORDERED that the Motion of the Government for Enlargement of Time to Rebut Plaintiffs' Response to the United States' Motion *in Limine* [Docket No. 54] is hereby denied.

SO ORDERED this the 7th day of October, 2008.

                                            s/ William H. Barbour, Jr.
                                            UNITED STATES DISTRICT JUDGE